Case number 21-1213. Jill L. Stein, Dr. and Jill Stein for President, Petitioners versus Federal Election Commission. Mr. Hall for the Petitioners, Ms. Ward for the Respondents. Mr. Hall, good morning. If you'd proceed, please. Good morning. May it please the Court, Oliver Hall on behalf of the Petitioners. This appeal is from a repayment order that the Federal Election Commission entered against Dr. Stein's 2016 Presidential Campaign Committee under the Presidential Primary Matching Payment Act. The order requires that Dr. Stein personally repay $175,272 in matching funds that her committee received under the act. To satisfy it during the pendency of this appeal, Dr. Stein was obliged to withdraw the entire $175,272 from her personal retirement account. But the order never should have been entered, and this Court should now reverse it on two grounds. First, the Matching Payment Act is unconstitutional as applied here because it imposes severe and unequal burdens on minor party candidates and is not narrowly tailored to serve any governmental interest. Second, the Commission arbitrarily and capriciously refused to consider the Stein Committee's actual winding down costs, which are more than sufficient to eliminate any repayment obligation. On the first point, what do you do with Buckley? Buckley says the government can permissibly choose to fund major candidates but not minor candidates, and the scheme here is one substantial step short of that, which is they're funding any candidate who agrees to the terms of funding, and your argument is there's some disparate downstream impact because of the way states structure their ballot access. Judge Katsas, in Buckley, the Court was concerned with the constitutionality of a statute that provided funding for candidates, and the Court in the decision of whether to provide full funding for all candidates or whether the government has an interest in discriminating among candidates based on their level of popular support, and the Supreme Court recognized in Buckley that that is a legitimate interest. The government has an interest in providing funding to parties that have established substantial support among the electorate and a lesser amount of funding for parties that have established only a small amount of support, and perhaps at some point no funding for parties that have established no support. Here, Dr. Stein is a qualified candidate under the Matching Payment Act. She has established that she qualifies for funding. The problem is that the way the statute operates is that it the date of the major parties' conventions, which undermines the very purpose of the statute, which is to provide funding for qualified candidates. It leads to arbitrary results. In 2012, Dr. Stein was entitled to receive complete reimbursement for all of her ballot access expenses under the Act, and in 2016, she was only entitled to receive about half the reimbursement for about half the expenses. Your equal protection argument is that the scheme, the government spending scheme, skews the competitive balance between major candidates and minor candidates, right? Correct. And it seems like the provisions at issue here do that way less than what the Supreme Court said would be permissible, which is the government chooses only to fund major candidates. I don't think that's correct, Your Honor, and the reason is that the way this statute operates is that it provides funding to a minor party candidate like Dr. Stein, who accepted the funding in good faith, used the funding to pay for what the FEC itself recognizes to be qualified campaign expenses under the Act, only to discover after the fact that the expenditures for those expenses that would otherwise be qualified campaign expenses, in other words, reimbursable, are not in fact reimbursable. Why? For one reason only. The major parties had already held their conventions. And so now the way the statute operates is that five years after the fact, and going on seven years after the fact, the commission is ordering this candidate to repay funds that were accepted in good faith and spent in good faith on what the candidate reasonably believed, based on the FEC's own interpretations and authorities, would be qualified campaign expenses. So it's a very different situation from one in which the government is saying, look, we have a reasonable interest in discriminating among candidates in our determination of whether or not to provide public funding for them. Here, the statute provides the funding to a qualified candidate and then puts the candidate in the position years later of having to repay it from her own personal funds. It's a very different situation and much more burdensome than this, than the, really the burden in Buckley was merely you don't qualify for funding, so you don't get funding. This is different. Let me ask you about the winding down expenses, Mr. Hall, and I grant you that the FEC, if it didn't lull Dr. Stein into thinking she could supplement the things they, even assuming, though, that you've raised the issue of estoppel, that is the government is estopped from not considering what she has submitted. We have four prongs that you have to to assert estoppel against the government, the last one being affirmative misconduct by the government, and I don't see, even if they assured her that she could submit these, the information, that that comes anywhere close to affirmative misconduct. Well, Judge Henderson, as you're aware, we did not argue estoppel against the government, but in response to your question, the commission did not include the materials submitted, the February materials and the March materials, as they're designated in our briefing. The commission withheld that from the administrative record, even though it was properly and timely submitted to the commission. The commission did not disclose this either to petitioners or to the court. This is the very evidence that petitioners would rely on to demonstrate that no repayment order is justified. So, if one of the prongs of the estoppel standard is to demonstrate misconduct, we think that certainly comes close. It's perfectly fine to exclude the materials if the government's forfeiture theory is legally sound. If the waiver? Waiver, yeah, Red calls it waiver. It's really forfeiture. But if they permissibly imposed a forfeiture, then the materials wouldn't be relevant to anything because they were submitted too late. Well, Your Honor, I guess that puts the cart before the horse, because we have to determine whether the forfeiture standard is satisfied here. And here in our briefing, we just think it's perfectly clear that this issue was not waived. It is explicitly raised in the committee's request for administrative review. It was explicitly attempted to be resolved by the committee with the commission in the proceedings below. The commission declined to allow the committee to address the issue in the proceedings below, on the ground that the commission expressly intended that it could be raised in a request for administrative review and in an oral hearing. And that's exactly what the committee did here. Suppose we have an appeal in a criminal case, and the criminal defendant files an opening brief. And the brief in its entirety is about the Fifth Amendment. And then the brief has one sentence which says, by the way, we will also show a Sixth Amendment violation. That's all the blue brief says. You think we would consider a Sixth Amendment claim if the defendant came in and two days before the argument dumped a trove of documents on us that bear on a Sixth Amendment claim? We wouldn't consider that. Well, Your Honor, in one of the cases cited by the commission in its own briefing, which we address in our reply, this court determined that an issue had not been waived, even though it was only mentioned in a single paragraph in a 58-page brief. We certainly exceed that standard here. And again, this is not something that was just raised for the first time in the written request for review. It was central to the issues being litigated essentially in the administrative hearings before the Federal Election Commission, and it was explicitly raised in the written request for review. And again, only needed to be raised because the commission declined the opportunity for the committee to address the issue in the administrative proceeding, specifically on the ground that the issue could be resolved during this process or even during the process of the oral hearing before the commission. During this process in which the reg says you've got to raise all legal and factual claims when you seek review of the final audit report in writing. And that's what was done here. We've quoted it in our briefing several times. The written request for review expressly states that if the commission will consider the committee's actual winding down costs, no reimbursement would be required. And look, this is not a complicated issue. This is not like the waiver or forfeiture cases that the FEC has cited in its briefs. This doesn't require a great deal of explication. The only explication involved is our actual costs are greater than the estimate that you used, and you should use the actual costs. That's it. That's the entire issue. And it's perfectly clear the FEC had no confusion about what this issue involved. It's not complicated, but it is fact intensive. I mean, they can't make this determination without the factual submission, the receipts, and everything else. Correct. But once the issue is raised, the committee is entitled under the regs and under the statutes to submit additional documentation relating to an issue that has been raised. And that's exactly what the committee did here. Okay. I don't have anything else. All right. Mr. Hall, we'll give you a couple minutes in reply. Ms. Ward. Good morning, and may it please the court. My name is Shana Ward, and I represent the Federal Election Commission in this matter. Pursuant to the Matching Payment Act, Congress has provided a limited period of public funding to secure a party's presidential nomination. In order to receive these funds, a candidate must agree to certain terms, including that they will repay the funds that post-date their eligibility or were otherwise not properly documented or preserved. Here, the commission properly determined that the Stein Committee was required to replay a surplus of public funds and funds the committee received in excess of entitlement. Now, there are two issues that the petitioner has asked this court to review on this final repayment determination. First, the provision of the act that determines a candidate's period of entitlement to matching funds, called the matching payment period, Section 90326. In 2016, that period ended for Dr. Stein when she received the nomination for the Green Party at its national nominating convention. The commission provided Dr. Stein the longest period possible applicable under the statute in determining her period of eligibility, and this was the same standard that was applied to the Stein Committee in 2012. Second, the commission's decision not to consider the Stein Committee's argument that it had additional winding down costs that it claims would negate or lower its repayment obligation was not contrary to law, arbitrary, or an abuse of discretion. The commission's regulation, 11 CFR 9038.2 C2I, is clear. The committee was required to submit legal and factual materials demonstrating that no repayment or a lesser amount was required. The committee failed to do so. Thus, the commission reasonably applied this regulation in determining that this category of expenses had been waived. Now, taking the first issue, Section 90326, which determines the matching payment period, this was constitutionally applied to Stein. The statute provides two endpoints for a candidate's ability to receive matching funds. First, the date the party nominates the candidate during a national convention, or if a party does not use a national convention, then either the date the party nominates the candidate or the last day of the last major party convention, whichever is earlier. The commission provided Stein the later of those two dates that would be later Section 90326, which was again the date of her nomination at its national nominating convention. As the court stated in Buckley, public financing provisions are constitutional for equal protection purposes if they're enacted in furtherance of a sufficiently important government interest and do not unfairly or unnecessarily burden the political opportunity of any party or candidate. And this provision that Congress created is consistent with Buckley. Buckley recognized different categories of public funding based on level of support. And also, in American Party of Texas, the court noted that statutes can create many classifications, which do not deny equal protection. And the government has an interest here. The government has an interest in primarily protecting the funds for which it has designated. And additionally, Congress defined the matching payment period to delineate between the primary election on the one hand and the general election on the other. And this ensures not only certainty, but objectivity in making sure that this is applied the same way, which the commission has done. Congress set forth a reasonable division between the two. And the position that Stein is advocating here to extend this period beyond the statutory date is inconsistent with this dividing line. And moreover, the provision does not impose a discriminatory burden on Stein's political opportunity simply because it may result in an eligibility period that does not encompass all 50 state ballot access deadlines plus territories. There's no denial of access to the ballot. And if there is a difference in the period of funding, it derives from the state-specific procedures or a party's own in Buckley squarely rejected the idea that Congress is required to equalize all the burdens that minor parties face if it chooses to provide funding for campaign activity. Can I ask you about the wind down costs? Yes, Your Honor. Seems to me you're on pretty firm ground with regard to costs that arose by the time Ms. Stein had to file the challenge to the final audit report, which is the document in which you say all legal and factual issues have to be raised. But she was continuing to incur wind down costs after that date. I don't see any rule of saying you have to have all your wind down costs incurred by a year or two years or whatever after the election. So she's continuing to incur costs after the date at which you say she's supposed to provide all the factual support. What could she possibly do? How could she possibly deal with documenting costs that are legitimate but haven't been incurred by the time that a brief has to be filed? Well, Your Honor, as you mentioned, the 11 CFR 9038.2 C2I notice has to put the commission on notice about the claims or arguments, which is why it requires these legal and factual materials to be submitted at that time. Now, the committee, based on its own submissions, had incurred winding down costs even as of the date that it submitted this request for administrative review, however, did not include any legal or factual arguments relating to this category of expenses that they claim to have incurred by this point or were of its submission where they are required to submit these legal and factual materials. What else could she have done with regard to future costs? She flags the issue. There's no doubt if this letter at JA 26 functions more like a statement of issues than like a blue brief in a issue is flagged that she's going to raise something about wind down costs. And, you know, we can we can fairly hold her to not submitting what she could have submitted by the date this is due. I don't know how we can hold her to documenting costs that haven't that hadn't occurred yet. Well, Your Honor, it's it's it's not just that, the the words winding down costs had not been mentioned in the request for administrative review. It was that they failed to submit any legal or factual materials relating to this category of expenses. Your Honor, we are incurring winding down costs now. We will continue to incur winding down costs, right? Receipts, any other documentation supporting the fact that they had additional winding down costs. You're absolutely right that, you know, there's there's not a way for them to determine how much in winding down costs that they would continue to incur at the date that they submitted their request for administrative review. But what their request does not do is provide any notice to the commission that they had this additional category of expenses, these winding down costs that they had not ever submitted documentation for, and that they were continuing to incur even as of the date of its submission. They did not include any documentation in that regard, even though, according to them, that they had incurred those costs by that date. And so, so what so what so what would they do? They could have been a little more clear, I suppose, that there would be costs continuing to arise in the future. Would they have had to give an estimate? You know, Your Honor, I'm not sure what, you know, the commission would have accepted. But I will say that what was needed was more than what was provided here. And if that was an estimate, if that was documentation showing that they had incurred winding down costs as of this date, then that would have provided something more than what was at issue here. And so suppose they gave a good faith estimate, and then it turned out to be low. And they could have as the date of the hearing, they could have proven as clear as can be that there actually were more costs than they estimated. Right. And I, and I think, Your Honor, that that would be a different scenario than what we're facing, facing here. The sentence again, and I'll just reiterate it was that it will be shown that other findings concerning the nature of winding down expenses, misstatement of financial activity, and disclosure of debts and obligations cannot survive strict scrutiny. That was the basis of what they claim preserved the issue. And again, Your Honor, you know, I think that the standard here is arbitrary or capricious. And I think the commission reasonably applied its its waiver rule to make this determination. And if this Gordon Robertson noted that even a technical or strict application of 903 8.2 c two, I cannot be considered unreasonable. And you know, I think the commission's determination here in applying that regulation was reasonable and in line with Robertson. I see my time is up. May I briefly conclude? Of course, yes. Thank you, Your Honors. Congress was entitled to provide only a limited period for matching funds that this period did not cover the entire ballot access period for the Stein committee does not equate to an invidious discrimination under the Equal Protection Clause. The commission's repayment decision in this case is consistent with court and agency precedent. And the commission's determination regarding winding down costs was not arbitrary or unreasonable. The commission therefore respectfully request that this court deny the petition for review and affirm the commission's repayment determination. Thank you, Your Honors. All right. Thank you, Council. Mr. Hall. Why don't you take two minutes? Thank you, Judge Henderson. I would like to follow up on your point about misconduct by the commission. In our opening brief, we cited rules 16 and 17 of federal rules of appellate procedure, which define the scope of the record in an administrative proceeding and require the agency to submit those materials to this court on appeal. Here, the agency failed to do that in direct violation of these rules. And the notion that they may prevail on the issue of waiver does not remedy that violation because they are not in the position to prejudge whether this court will determine an issue to be waived, even though it has been explicitly raised in the written request for review. The rules require them to submit the materials. They didn't submit the materials. They withheld them. These are the materials that could be dispositive of this entire appeal. They didn't disclose it to the petitioners. They didn't disclose it to the court. That to us suggests something that rises to the level of misconduct. With respect to the winding down costs and whether the committee could have done more than it had done, it's important to remember that the commission had a quorum, a loss of a quorum for 16 months during the pendency of this appeal. It occurred right after the committee filed its written request for review and lasted for 16 months. It would not have been possible for the committee to anticipate that 16-month period. It would not have been possible for the committee to provide an accurate estimate for that period. And if on no other issue, this appeal requires remand to the agency because there's no way the commission, the committee could have anticipated that issue. The opposing counsel has suggested that 90326 is justified because it limits the amount of public funds that are spent under the Matching Payment Act. The Matching Payment Act already has provisions that do that. You have to first become a qualified candidate under the Matching Payment Act in order to receive funds. What this provision does is arbitrarily terminate a party convention. I see that my time is up. I would just like to thank the court and, of course, I am available to answer any further questions. All right. If there are no questions from Judge Katsas, then thank you, counsel. And Madam Clerk, if you would close us down, please.
judges: Henderson, Wilkins, Katsas